We have three cases to be submitted today on oral argument. I expect that we'll hear the first two and then take a short break and then hear the third case. We begin with United States v. Guzman-Rendon. Ms. Kimmelman. May it please the Court. Kristen Kimmelman for Diego Guzman-Rendon. At sentencing, Mr. Guzman's offense level for his illegal reentry offense was increased 16 levels under former guideline 201.2 because the Court categorized his prior Florida drug convictions as drug trafficking offenses. This was over Mr. Guzman's objection and he contends on appeal that it was an error. It is undisputed that Florida does not require the prosecution to prove the mens rea of knowing as to the illicit nature of the substance involved. And the question before this Court is whether or not Florida drug conviction would still be a drug trafficking offense under 201.2. Why isn't this case easily resolved under Richardson by saying even if there was error, the Court considered both sets of guidelines and said that the Court would still give the same sentence and therefore any error is harmless? The Court did not clearly say that it would give the same sentence and it was clearly influenced by the guidelines. It calculated the incorrect guidelines as 41 to 51 months and then gave a sentence at the bottom of that range, 51 months. And the initial question of the error is important to determine because of the Court's repeated consistency at looking at the generic contemporary definition of the offense listed in the drug trafficking offense in 201.2 as it applies the categorical approach of comparing the elements of a state conviction to that federal definition. And the Court has repeatedly looked at the Federal Controlled Substances Act to help inform what that generic contemporary definition of the offense is. It did so in Reyes-Mendoza when it was trying to decide what does manufacturing a controlled substance mean is simply knowing that the precursor that is manufactured, that it's going to be used in a controlled substance, is that sufficient? And the Court decided that it was not, that instead there had to be an intent to manufacture that ultimate controlled substance. And it did so by looking at the plain meaning, what's the common understanding of manufacturing a controlled substance, and also looking to case law, both cases interpreting the guidelines and the Federal Controlled Substances Act in order to support its conclusion. And the Court has further refined that approach in Terransales when it looked at what does administering mean? Does the fact that Texas administering a controlled substance include acts that are not necessarily criminalized by the Federal Controlled Substances Act still make Texas either a drug trafficking offense or not? And so the Court was using the Federal Controlled Substance as a source in defining what that generic definition is. And here, the Federal Controlled Substances Act is quite clear that a knowing mens rea is required as to the illicit nature of the substance. It's also required in the Uniformed Controlled Substances Act, and it's required in a vast majority of states. To my knowledge, only Florida and Washington do not require a knowing mens rea as to the illicit nature. And so here we have almost near uniformity as to what it means to be convicted of a drug trafficking offense, and Florida does not fall within that general definition. And for that reason, Mr. Guzman's prior Florida drug trafficking offenses should not be considered as – excuse me, his prior Florida drug convictions should not be considered as 201.2, drug trafficking. I'm sorry, I wanted to ask you, you said the Court didn't explicitly consider the correct guidelines, but on page 88 of the record it says, the Court finds that given Mr. Guzman Rendon's prior drug history and his prior five-year sentence in the state penitentiary, that his continuing to violate American law justifies a departure upward or variance to 41 to 51 months, even if the proper guideline calculation range is 8 to 14 months. So how can you say the Court didn't consider under Richardson both guidelines and still give the same sentence? If I said that, I misspoke, because the Court did consider both ranges, but the Court did not say explicitly it would have imposed the same sentence. The Court said it would have imposed the same range. And I believe that distinction is important because talking about a range, again, evokes the guidelines, and what does the Sentencing Commission consider to be an appropriate sentence, and the Court referring to that range does not indicate that the Court was necessarily... The Court is saying, if I sustained your objection and then the guideline would be 8 to 14, I would then vary upward to 41 to 51. So we're back to 41 to 51, and then I give 41. So the Court has gone through the whole process of let's imagine 8 to 14, yada, yada, yada, we get to 41 to 51. Now I think it really is 41 to 51, and either way I get to 41 months. I mean, you're basically making it have to be like magic words that the Court has to say, and I don't think Richardson or any of the cases say that. The question is, did the Court give due consideration to the right range? And here very clear, I mean, to me this couldn't really be clearer. How could it be clearer? It's clear that the Court knew what the correct range could have been and disagreed with that range, but the Court did not clearly impose the 41-month sentence regardless of the ranges, and that, I believe, makes this case different. And because of that distinction, the government is required to show more, that the Court would have imposed the exact same sentence for the same reasons in the record. The Court did not even cite to 3553A. It miscited the sentencing statute. There was no reference to the parties' arguments. Well, it says 3553E, and it goes, I believe it's A, and I go, okay, I mean, we knew. But that indicates perhaps a lack of disregard for those sentencing factors, and the Court certainly could have varied upward, departed upward. It's just not clear enough on the face of this record that Mr. Guzman's sentence shouldn't be vacated and remanded. He's been a federal judge for 15 years. You say he doesn't know the sentencing factors? I'm saying it's not clear in the record that he considered those sentencing factors regardless of the guidelines to impose this sentence. Okay. And Judge Beery can certainly consider all those factors on remand to give Mr. Guzman the sentence after the Court finds that the initial categorization of the drug trafficking offense was in error. The Court asked for further supplemental briefing regarding the decisions of Allay and Reyes-Mendoza. I believe I answered that in my supplemental letter brief, explaining that Allay is different than the drug trafficking offenses because it addresses a clearly defined offense of forcible sex offenses in the crime of violence definition of 2L1.2. And that was the basis for the Court's holding in Allay that it did not need to find a specific mens rea attached to the forcible sex offenses. And because the Court has recently in Teran Salas, in Martinez-Lugo, in Gomez-Alvarez looked to that generic contemporary definition and used the Federal Controlled Substances Act as an important source for informing what that definition is, I believe this Court should continue with that approach and apply the same reasoning to Mr. Guzman's case. And unless the Court has any other further questions, I'm happy to cede my time. Yes, you've saved time for rebuttal. Thank you. Yes, thank you. Mr. Stelmach? If I may, I'd like to take the issues in reverse order and talk about the harmless error aspect. I think this case is pretty interesting with regard to that. The Court was well aware of the guideline range of 8 to 14 months if the 16-level offense level was found to be incorrect. And this is an unusual case because the 18 and 14-month range was not only emphasized by counsel, it is in the pre-sentence report. The pre-sentence report, if the guideline adjustment is found to be incorrect, the pre-sentence report has the correct guideline range of 8 to 14 months. I don't think I've ever seen an alternative sentence case where the PSR has the correct guideline calculation already with the removal of the potential error. And at the sentencing hearing, the probation officer reiterated his position that he didn't think the 16-level increase should be imposed, but that without the 16-level increase, the range was inadequate. And then the prosecutor said this involved four cocaine sales. If the 16-level increase is not imposed, then the cocaine sales should be found to be qualifying transactions. And the Court completely recognized that this was open for dispute and could be reversed on appeal, but still found the 41 to 51 range appropriate. Can you make the argument that the Court didn't say, I don't know, I'm having a little trouble understanding the opposing counsel's argument, but it's something to the effect of just announcing that you would impose the same range isn't the same as saying you'd impose the same sentence. He didn't say, he didn't use the magic words, I'm going to impose the same sentence, but he says I will impose the same sentencing range and then selected the 41 months, which is a manifestation of the same range. I'm just wondering how it would possibly have worked differently. I mean, if he said, if he overruled the objection, I mean, or sustained the objection and said, all right, the proper range is 8 to 14, however, I am now going to vary upward to 41 to 51, and I hereby announce a sentence of 41, how would that be different from what he did? That would be a better magic words rendition, but that wouldn't be any different than what the Court did. I think the case that I 28-J Sanchez is a published opinion, and that continues with the idea that we're going away from magic words. And Sanchez talks about where the sentencing court indicates that it wants to move the objection, the guideline objection, by, in effect, granting the objection and then imposing the same sentence, that that's an indication of what it is. Well, I guess my point was a little bit more refined, and that is, if the Court had actually said, you're right, defense counsel, 16 level doesn't apply, I hereby agree with you, now that would mean 8 to 14. However, I now also find that I should vary or depart upward. You typically vary, depart upward to a range. On depart, you have to depart up to a range. Vary, that's typically how it works too. It's just which one's under the guidelines, which one's not. That's the difference between vary and depart. So you go and you say, let me look for the correct range, and that would be 41 to 51. Now I will impose a sentence. That is exactly how you would do it. I mean, that is the correct way. So it's not even a failure of magic words. It's actually how the process works. And the Court gave reasons for the alternative sentence was his history of drug convictions, his prior five-year sentence. Actually, it was a prior six-year sentence, but the Court called it a five-year sentence. And although the Court didn't say this is 3553A to A, B, and C, those reasons relate to just punishment under A, adequate deterrence under B. The Court twice, at pages 86 and 88, talked about how the sentence was not adequate for deterrence. And so he emphasized the B factor, even though he didn't enumerate it as a B factor, and the need to protect the public under C. So I think that the alternative sentence, harmless error, is probably the best resolution of this case. But the guideline issue is very interesting. And the question in the guideline issue is whether this Court should impute the mens rea of the Federal Drug Trafficking Statute as to knowledge of the controlled substance into the guideline definition of a drug trafficking offense. And this is very similar to what was decided in L.A. where the Court declined to impute a knowing mens rea into the forcible sex offense guideline. Well, does the Department of Justice take a position on that question? My position is that this case is completely within L.A. and that it controls and provides the best resolution of the case. You don't go to the generic contemporary meaning in Steps 2 and 3 if the first step is met, if the meaning of the category is clear from the guideline commentary. And just as in L.A., the definition is clear enough on its face to provide the plain meaning. Imputation should not occur because the guideline definition is written very broadly without any reference to the Federal Drug Statute. And it's significant. In the to all commentary, there's at least 15 statutory references. What do you want this Court to do? What do I want this Court to do? I assume you want us to affirm for harmless error. You don't want that? I do want to affirm for harmless error. Okay. You're arguing the alternative point. I'm arguing the alternative point. The point is that the guidelines know how to incorporate a Federal statute. They know how to incorporate the elements of a Federal statute. And they could have, but they declined to incorporate 841. And, therefore, we shouldn't issue an argument. And, therefore, this Court shouldn't. There's principle that the legislative body should be presumed to have acted purposely and intentionally. Analogously, in the career offender guideline, the 4B guideline, that was initially defined in terms of 841 back in 1998, but the Commission removed the Federal references, and now the definition is the same as the 2L definition. I think that's showing the intent that the CSA was not to be the yardstick to be used. So here, just as in L.A., notably absent from the guideline is any mention of a required mental state. There's no mens rea expressed or implied in the guideline definition. This case is not like Moncrief and Sarmiento's, because there the CSA is incorporated through 1101A43. As to the four cases, there are three cases, Toronto Salinas dealt with administering a controlled substance was within dispensing, but here there's no issue of an ambiguous term in the state statute being measured against the guideline definition. There's no word that requires further definition. Martinez-Lugo did not involve a question about methodology. The Court found there was no claim that the elements were overbroad. Excuse me. Gomez-Alvarez involved a situation where the judgment was unclear as to what controlled substance was involved, and the Court found overbreadth because the schedules were broader in the Federal statutes. And that's because controlled substance didn't have a plain meaning and was ambiguous in the context of the schedules. It was in need of further definition. There's no ambiguity as to the knowledge element of possession with intent to distribute. In both the guidelines and in the statute, there is no knowledge of it. They have none. Finally, about applying a lay to Reyes-Mendoza, Reyes-Mendoza was concerned about the ambiguity in the term manufacturing, and the Court found that manufacturing had been more broadly interpreted under California law than under the guideline. But the Court in Reyes-Mendoza didn't refer to 841 or didn't refer to 802. It rather looked at the plain meaning of manufacture and the 2L case law. And I guess I'll end with just general principles that legislatures have wide latitude to declare an offense and to exclude elements of knowledge from its definition. And the Court has ordinarily resisted reading words or elements into a statute that don't appear on its face. But, yes, Judge Higginbotham, I think that the alternative sentence is the best resolution of the case. Thank you. All right. Thank you, Mr. Stillmark. Ms. Kimmel, you've saved time for rebuttal. Thank you, Your Honor. The drug trafficking offense is defined as a list of offenses in the 2L 1.2 commentary. Those terms, manufacturing, dispensing, distribution, are not defined in that commentary. Without any definition to inform them, they resort to just labels. And our precedent teaches us we can't just look to labels. We have to compare elements to elements. What does it mean to distribute a controlled substance? And that is not defined in the guidelines. And Martínez-Lugo was very clear about how the approach works, that the proper standard of comparison in this categorical inquiry is the elements of the enumerated offense, in that case it was possession with intent to distribute, not the general meaning of drug trafficking. And that is because the guidelines definition reflects a determination that certain enumerated offenses qualify for drug trafficking offense enhancement so long as the offenses are consistent with the generic contemporary meaning of the enumerated offense that the commission was contemplating when it adopted the definition. When the commission adopted the definition of drug trafficking offenses in 2L 1.2, it was doing so against a backdrop of the Federal Controlled Substance Act, the Uniform Controlled Substance Act, and the near uniformity of state codes that was informing what do these enumerated offenses mean. And that is the approach that the court has been using. And that's the approach that the court used in Reyes-Mendoza to determine what does manufacturing a controlled substance mean. And it's not only the Controlled Substance Act that the court looks to. Opposing counsel is correct in that. It can look to the state codes. It can look to modern treatises. It can look to model codes. And that is what the Supreme Court teaches us we're supposed to do in the categorical approach. It's not just the Federal Controlled Substance Act. But in this case, in Mr. Guzman's case, it so happens that the Federal Controlled Substance Act is consistent with what the majority of state codes and the Uniform Controlled Substance Act require, and that is a knowing mens rea as to the illicit nature of the substance. And so based on that case law, it's clear that there was error in categorizing Mr. Guzman's Florida drug conviction as a drug trafficking offense. Now, the court said that it would abide by the guidelines towards the beginning of the sentencing hearing and said that Mr. Guzman was lucky for that. And so the guidelines were a lodestar, were the anchor in the court's mind when it calculated what those guidelines were. It had the other ones before it, but it still calculated the guidelines as 41 to 51 as it is supposed to do under Booker and his progeny, what are the guidelines. And then the guidelines, as the judges acknowledged, would incorporate a departure. Typically, at least in practice that I've been involved with, the judges then vary from the guidelines. The guidelines are established and then determined after considering the nature of the circumstances of the offense, here his first illegal reentry, the defendant's criminal history here, the two-week span of those Florida drug offenses in 2007 when Mr. Guzman was 22 years old, and the need for just punishment, deterrence, and rehabilitation to decide what is the proper sentence in this case. And the court ultimately imposed the 41-month sentence, but it's not clear that the court considered all of those other factors that it must do under the sentencing regime to come to that conclusion. We ask the court to vacate and remand. All right. Thank you, Ms. Kimmelman. Your case is under submission.